UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAROL GESCHKE,

             Plaintiff,

     v.

SOCIAL SECURITY ADMINISTRATION,

             Defendant.

CASE NO. C06-1256C

ORDER

      This matter comes before the Court on Defendant's Motion to Dismiss (Dkt. No. 23) and Plaintiff's Motion to Amend Complaint (Dkt. No. 48). Having considered the papers submitted by the parties and finding oral argument unnecessary, the Court GRANTS Defendant's motion and DENIES Plaintiff's motion for the following reasons.

I.    **BACKGROUND AND FACTS**

      Plaintiff became disabled within the meaning of the Social Security Act in 1994 due to a pulmonary condition and began receiving disability benefits. It is undisputed that from 1995 through 2001, Plaintiff also worked at Safeco Insurance Company. She was terminated from her employment with Safeco effective May 21, 2001 due to a determination that, despite accommodations made regarding health-related absences, Safeco would face an undue hardship in further accommodating Plaintiff's

ORDER – 1

1  unpredictable attendance at work.  (Pl.'s Opp'n, Geschke Decl. Ex. A.)  In February of 2003, the Social

2  Security Administration ("SSA") notified Plaintiff that it had preliminarily determined that payments made

3  from January 1996 forward were overpayments to which Plaintiff was not entitled because she was

4  involved in substantial gainful activity.  (Def.'s Mot., Moore Decl. Ex. C.)  A decision notice was then

5  issued on April 16, 2003.  (*Id.* Ex. D.)  On May 3, 2003, the SSA sent another notice informing Plaintiff

6  that overpayments from November 1998 forward totaled $93,640.70.[1]  (*Id.* Ex. E.)  Plaintiff requested

7  reconsideration of this decision, and the SSA sent a letter to Plaintiff on August 30, 2003 informing her

8  that the agency had determined that its initial decision to stop her benefits was correct.  (*Id.* Ex. F.)

9  Significant here is the fact that Plaintiff requested "reconsideration" of the termination decision, but she

10  did not additionally request a "waiver" of recoupment of overpayments by filling out the required Form

11  SSA-632-BK.  (*See* Pl.'s Opp'n, Geschke Decl. Ex. C ("Request for Waiver of Overpayment Recovery

12  Or Change In Repayment Rate" form).)  Central to Plaintiff's claims is her contention that the form

13  required by the SSA to trigger a "waiver" request violates the Commissioner's own regulations by

14  seeking detailed financial information that she claims is not required for the type of waiver she is seeking.

15  (*See* Am. Compl. ¶ 6.5; Def.'s Mot. 4 & n.5, 11; Pl.'s Opp'n 7–11; Def.'s Reply 7–8 & n.9.)

16       Plaintiff timely appealed the SSA's Notice of Reconsideration, and a hearing eventually occurred

17  on September 29, 2005.  (Def.'s Mot., Moore Decl. Ex. G.)  Administrative Law Judge Donald P.

18  Krainess issued a decision on December 27, 2005 and notified Plaintiff of her right to seek review before

19  the Appeals Council.  (*Id.* Ex. H.)  In light of the ALJ's determination that the record contained a

20  "possible inconsistency in SSA determinations," the ALJ's decision remanded the matter to the SSA for

21  "clarification of its determination" that Plaintiff's eligibility, originally established in 1994, had ended.

22

23

24      [1]  The amount of overpayments has been alleged elsewhere to be as much as $101,199.20.  (*Id.*, Burrows Decl. Ex. M.)  Though Plaintiff repeatedly objects to an alleged lack of accounting or reconciliation of various totals claimed by the SSA, for purposes of the instant discussion, the precise

25  amount of alleged overpayments is not material.

26  ORDER – 2

1    (*Id.*)  The requested clarification was sent to the ALJ on July 28, 2006, explaining that Plaintiff's

2    disability benefits were terminated, effective December 1998, due to her substantial gainful activity at

3    Safeco.  (*Id.* Ex. I.)  However, on August 22, 2006, pursuant to Plaintiff's further appeal, the Appeals

4    Council vacated the ALJ's December 27, 2005 decision because there was no basis for the request for

5    clarification and remanded the claim for further proceedings.  (*Id.* Ex. J.)  The Appeals Council defined

6    the issue before the ALJ on remand as

7            continuation of entitlement to a period of disability and disability insurance benefits
             following the reconsideration determination that disability ceased as of December 1995
8            following a trial work period and that entitlement to a period of disability and disability
             insurance benefits ended effective December 1998, the first month of substantial gainful
9            activity following the 36-month extended period of eligibility.

10   (*Id.*)  The Appeals Council further determined that potential additional issues were the existence and

11   amounts of possible overpayments and whether any overpayment established may be waived, and that a

12   consolidated hearing including these additional issues was possible but not required.  (*Id.*)  The Appeals

13   Council noted that the record upon which the ALJ had relied had been lost and needed to be

14   reconstructed.  (*Id.*)  Approximately one week later, on August 31, 2006, Plaintiff filed the instant

15   lawsuit.  (Compl. (Dkt. No. 1).)

16           On October 24, 2006 the ALJ scheduled a hearing to be held on November 16, 2006, and

17   determined that the issue to be determined would be essentially the issue remanded by the Appeals

18   Council and that he would not decide the optional additional issues regarding overpayments and waiver at

19   that time because they were not addressed in the SSA's August 30, 2003 Notice of Reconsideration.

20   (Def.'s Mot., Moore Decl. Ex. L.)  On November 8, 2006, the ALJ notified Plaintiff that the lost original

21   claim file had been found.  (*Id.* Ex. M.)  Plaintiff claims that the lost-and-found file constitutes only a

22   portion of her record dating back to 1994, and that some files remain lost.  (*Id.* Ex. N.)

23           The ALJ's hearing was rescheduled to February 5, 2007, due to Plaintiff's illness with pneumonia.

24   (Def.'s Mot., Moore Decl. Exs. N, P.)  Upon the ALJ's decision, Plaintiff will again have the right to

25   appeal to the Appeals Council.

26   ORDER – 3

1    On January 22, 2007, the Social Security Administration determined that, although Plaintiff is

2    eligible to receive retirement benefits as of December 2006, such benefits are being withheld to recoup

3    overpayments of disability benefits.  (Pl.'s Opp'n, Geschke Decl. Ex. G.)

4    Along the way, Plaintiff claims, she was denied access to the SSA's records despite requests made

5    pursuant to the Freedom of Information Act.  Plaintiff's counsel sent a letter on May 9, 2005 to the

6    Social Security Administration's Office of Public Disclosure ("OPD") alleging a failure to respond to two

7    FOIA requests made in March of 2005.  (Def.'s Mot., Burrows Decl. Ex. A.)  On May 13, 2005, the

8    OPD responded and indicated that the requests were being processed.  (*Id.* Ex. B.)  On June 2, 2005, the

9    OPD again wrote to Plaintiff's counsel and indicated that it believed that it had previously responded to

10   the March 2005 FOIA requests, and indicated a right to administrative appeal if Plaintiff was not satisfied.

11   (*Id.* Ex. C.)  Plaintiff did not administratively appeal this decision.

12   Plaintiff's counsel later wrote to the OPD in a letter dated August 5, 2006, requesting information

13   on employees who were involved in data gathering, record keeping, or record storage with respect to

14   Plaintiff's files for the years 1993 through 2006.  (*Id.* Ex. D.)  The OPD claims that this FOIA request

15   was received on August 29, 2006.  (*Id.*, Burrows Decl. ¶ 7.)

16   As noted *supra*, on August 31, 2006, Plaintiff filed the instant lawsuit asserting a FOIA claim.

17   (Compl. (Dkt. No. 1) ¶¶ 4.1–4.9.)  On September 8, 2006, the OPD wrote to Plaintiff to acknowledge

18   her FOIA request dated August 5, 2006 and to inform her that more time was needed to respond.  (Def.'s

19   Mot., Burrows Decl. Ex. E.)  Apparently, this need for additional time was connected to the lost file,

20   noted *supra*.  (*Id.*, Burrows Decl. ¶¶ 8–9.)

21   On September 11, 2006, the OPD learned of the instant lawsuit and an additional outstanding

22   FOIA request dated June 19, 2006, which was attached to the summons and complaint and which sought

23   all documents in Plaintiff's file, including electronically stored information, for the years 1995 through

24   2006.  (*Id.* Ex. F.)  On September 21, 2006, the OPD responded that it had only received the request on

25   September 11, 2006 and that a response would be forthcoming.  (*Id.* Ex. G.)  Also on September 21,

26   ORDER – 4

2006, the OPD responded to the August 5, 2006 FOIA request, indicating that Plaintiff could select the employees' names about whom she wanted information and the Seattle office would respond to her directly. (*Id.* Ex. H.) On November 9, 2006, the SSA sent a copy of Plaintiff's "found" file to her counsel. (Def.'s Mot., Moore Decl. Exs. S, T.) On December 15, 2006, the OPD sent two letters to Plaintiff's counsel, responding to Plaintiff's counsel's objections and requests for supplementation regarding the OPD's prior responses to the June 19, 2006 and August 5, 2006 FOIA requests. (Def.'s Mot., Burrows Decl. Exs. K, L.) These letters reiterated Plaintiff's right to appeal within thirty days. (*Id.*) Plaintiff filed an appeal dated January 19, 2007, which was received by the SSA on January 23, 2007. (*Id.* Ex. M.) This is the only FOIA administrative appeal that Plaintiff has filed regarding the foregoing FOIA correspondence. On February 22, 2007 the SSA issued a final decision indicating Plaintiff's right to bring a claim in a federal district court if she was unsatisfied with the final agency decision. (Pl.'s Mot. To Amend Ex. 1.)

On January 30, 2007, upon this Court's granting of her unopposed motion to do so, Plaintiff filed her Amended Complaint (Dkt. No. 22), which is substantially the same as her original Complaint for purposes of ruling on the instant motions.[2] Plaintiff asserts that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 552 (the Freedom of Information Act ("FOIA")), 28 U.S.C. § 1343(a)(3) and 42 U.S.C. §§ 1983 and 1985 (civil rights), 28 U.S.C. § 1361 (mandamus), and 42 U.S.C. § 405(h) (the Social Security Act). (*See* Am. Compl. ¶¶1.1–1.21.) She asserts five causes of action: "Denial of Benefits with No Hearing; Due Process Violation (First Cause of Action), "Violation of Freedom of Information Act" (Second Cause of Action), "Negligent or Willful Destruction of Records" (Third Cause of Action), "Violation of Americans with Disabilities' Act"

---

[2]  The Amended Complaint deletes the Washington State Department of Social and Health Services as a defendant and adds a cause of action for "Failure to Allow Retirement Benefits," which is treated with the First Cause of Action for purposes of subject matter jurisdiction analysis.

ORDER – 5

1    (Fourth Cause of Action), and "Failure to Allow Retirement Benefits" ([Fifth][3] Cause of Action).  (*Id.*

2    secs. III–VII.)  Plaintiff's requested relief includes an injunction in the nature of mandamus compelling

3    the SSA to make monthly disability payments to Plaintiff; declaratory relief as to Plaintiff's eligibility

4    ("availability" of benefits); FOIA remedies; monetary damages "in an amount that is not yet ascertained,

5    but which is estimated for purposes of this pleading at $600,000"; additional per diem damages of

6    $10,000 per day for every day that the SSA fails to pay disability benefits or "maintain any claim of an

7    alleged 'overpayment'" and $10,000 per day for every day that the SSA fails to pay retirement benefits to

8    Plaintiff; "back moneys due" for various benefits; declaratory relief regarding future payments; damages

9    for "embarrassment and emotional distress," alleged loss of files and failures to respond; costs and

10   attorney's fees; and "all other remedies the Court may deem necessary and just."  (*Id.* at 15–17.)

11          The parties engaged in unsuccessful settlement discussions before United States Magistrate Judge

12   James P. Donohue in February of 2007.

13   **II.    ANALYSIS**

14          Defendant makes this motion pursuant to Federal Rule of Civil Procedure 12(b)(1), seeking an

15   order dismissing Plaintiff's entire Amended Complaint for lack of subject matter jurisdiction.  Plaintiff

16   opposes any dismissal of claims and also seeks to further amend the operative complaint in this case to

17   alter her Freedom of Information Act claim.  Because Defendant objects to the proposed amendment on

18   subject matter jurisdiction grounds, the Court treats these motions together.

19          Subject matter jurisdiction is a nonwaivable threshold issue.  As succinctly stated by the United

20   States Supreme Court, federal courts

21          are courts of limited jurisdiction.  They possess only that power authorized by
             Constitution and statute, which is not to be expanded by judicial decree.  It is to be
22          presumed that a cause lies outside this limited jurisdiction, and the burden of establishing
             the contrary rests upon the party asserting jurisdiction.

23

24          [3]  The Amended Complaint erroneously lists two different "Fourth" Causes of Action.  The new
     "Fourth" Cause of Action is for "Failure to Allow Retirement Benefits" and is designated herein as the
25   "Fifth" Cause of Action.

26   ORDER – 6

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). Moreover, the United States and its agencies have sovereign immunity from all lawsuits unless Congress expressly waives that immunity. *Department of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999); *United States v. Shaw*, 309 U.S. 495, 500–01 (1940). Any legislative waiver of immunity must be strictly construed, "in favor of the sovereign." *Blue Fox*, 525 U.S. at 261; *see also United States v. Sherwood*, 312 U.S. 584, 590 (1941).

Plaintiff's claims can be divided into several categories for the subject matter jurisdiction analysis. Her First and Fifth causes of action are for "Denial of Benefits with No Hearing; Due Process Violation" and "Failure to Allow Retirement Benefits." Both of these causes of action may be treated together (*see infra* section II.A), because this Court's subject matter jurisdiction over them depends on whether they are claims for benefits under the Social Security Act and related questions of administrative exhaustion, whether the alleged constitutional violation (including §§ 1983 and 1985 claims) may be litigated in this forum at this time, and whether this Court has jurisdiction under the Social Security Act, § 1331, or the mandamus statute. Plaintiff's Fourth cause of action is an Americans with Disabilities Act ("ADA") claim, the jurisdictional question underlying which turns on sovereign immunity, as well as whether § 1331 allows this Court to hear this claim against the SSA (*see infra* section II.B). Plaintiff's Third cause of action, "Negligent or Willful Destruction of Records," sounds in tort, and this Court's jurisdiction must be analyzed in the context of the Federal Tort Claims Act ("FTCA") (*see infra* section II.C). Plaintiff's Second cause of action (and proposed amendment thereto) is a FOIA claim with particularized jurisdictional requirements (*see infra* section II.F). Finally, the Court treats various additional assertions of jurisdiction and arguments not tied to particular causes of action separately (*see infra* sections II.D, II.E, II.G, II.H, II.I). The Court begins with the causes of action seeking Social Security disability and retirement benefits.

//

//

ORDER – 7

1

      **A.**      **Social Security Act Jurisdiction and Mandamus**

2

      In assessing the available paths to subject matter jurisdiction over Plaintiff's claims that she was

3

improperly cut off from disability benefits without due process and that she has been improperly denied

4

current and future retirement benefits, the Court begins with the relevant jurisdictional provision of the

5

Social Security Act, which provides that:

6

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing.  No findings of fact or

7

> decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided.  No action against the United States,

8

> the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this

9

> subchapter.

10

42 U.S.C. § 405(h).  The third sentence of this provision is particularly relevant here, because it bars

11

general federal question claims (28 U.S.C. § 1331), federal constitutional and statutory claims against the

12

United States (28 U.S.C. § 1346(a)(2)), and claims under the Federal Tort Claims Act (28 U.S.C. §

13

1346(b)) when such claims arise under subchapter II (Federal Old-Age, Survivors, and Disability

14

Insurance Benefits) of Chapter 7—*i.e.*, the codification of Title II of the Social Security Act.  The United

15

States Supreme Court held in *Weinberger v. Salfi*, 422 U.S. 749, 760 (1975), that the fact that a claim

16

arises under *both* the Constitution and Title II does nothing to avoid the jurisdictional bar in the third

17

sentence.  Accordingly, to the extent that Plaintiff's claims "arise under Title II," her claims—be they also

18

regulatory, statutory, constitutional, or in the nature of torts—may not be heard by this Court unless she

19

properly seeks review as dictated by the Social Security Act (or successfully makes a case for mandamus

20

jurisdiction).  There are several additional rules central to evaluating Plaintiff's claims under the foregoing

21

standard, specifically regarding the scope of § 405(h) and the particular judicial review process to which

22

it refers.

23

      The scope of a "claim arising under" Title II of the Social Security Act has been the subject of

24

much discussion by the U.S. Supreme Court.  In *Heckler v. Ringer*, 466 U.S. 602 (1984), the Court

25

found that § 405(h) governs not only denials of claims for benefits, but also challenges to administrative

26

ORDER – 8

procedures governing access to future benefits.  In so holding, the *Ringer* Court rejected a distinction

between "substantive" and "procedural" elements of claims.  *Id.* at 614–15.  The *Ringer* Court further

found that claims for declaratory and injunctive relief, as opposed to monetary benefits, cannot escape the

terms of § 405(h).  *Id.* at 615–16.  Summarizing the rules of *Ringer* and *Salfi*, the Court in *Shalala v.*

*Illinois Council on Long Term Care*, 529 U.S. 1, 13–14 (1999), found that these cases

> foreclose distinctions based upon the "potential future" versus the "actual present" nature
> of the claim, the "general legal" versus the "fact-specific" nature of the challenge, the
> "collateral" versus "noncollateral" nature of the issues, or the "declaratory" versus
> "injunctive" nature of the relief sought.  Nor can we accept a distinction that limits the
> scope of § 405(h) to claims for monetary benefits.  Claims for money, claims for other
> benefits, claims of program eligibility, and claims that contest a sanction or remedy may all
> similarly rest upon individual fact-related circumstances, may all similarly dispute agency
> policy determinations, or may all similarly involve the application, interpretation, or
> constitutionality of interrelated regulations or statutory provisions.  There is no reason to
> distinguish among them in terms of the language or in terms of the purposes of § 405(h).

The *Illinois Council* Court then went on to reject any limitation on the scope of § 405(h) to "amount

determinations" in the case before it.  *Id.* at 15.

Plaintiff's claims fall clearly within the scope of § 405(h) as applied by the U.S. Supreme Court.

Plaintiff directly claims benefits because she seeks declaratory and injunctive relief, as well as monetary

relief amounting to hundreds of thousands of dollars, relative to her own eligibility for current, past, and

future disability benefits, potential disability overpayments made to her and the amount of such

overpayments, whether recoupment by the SSA of any overpayments is or will be permissible, whether

she should have had her disability benefits stopped, whether she should have retirement benefits started,

and whether disability recoupments may be taken from current or future retirement benefits.

Furthermore, Plaintiff's legal and constitutional challenges to the rules governing these decisions, the

phased decisionmaking approach employed by the SSA, the forms she must fill out to trigger certain

administrative processes and determinations, and the application of rules and paperwork requirements to

her particular case are all governed by § 405(h) as well.  Supreme Court precedent is clear that

constitutional, statutory, rules, or procedures challenges, farther reaching though they may be if a

ORDER – 9

challenge is sustained, ultimately are governed by § 405(h) when they are "inextricably intertwined" with an individual's claims for benefits. *Ringer*, 466 U.S. at 614. Plaintiff has raised no claim and challenged no internal mechanism or process that escapes § 405(h). Therefore, the next question is whether she satisfies § 405(h) in bringing this lawsuit.

The Social Security Act contains a specific judicial review provision, which states in relevant part that:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

42 U.S.C. § 405(g). This provision further specifies the actions a district court may take upon such review as entering "judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The first sentence of § 405(g), requiring a "final decision" after a hearing, is an exhaustion requirement "central to the requisite grant of subject-matter jurisdiction." *Salfi*, 442 U.S. at 764. As such, this exhaustion requirement is "something more than simply a codification of the judicially developed doctrine of exhaustion." *Id.* at 765. While fulfilment of the exhaustion requirement is dependent on procedures set forth by the SSA, failure to satisfy it deprives district courts of subject matter jurisdiction. Read together, then, § 405(g) and § 405(h) limit this Court's ability to hear claims arising out of Title II, such that this Court may review only final decisions where the exhaustion requirement has been satisfied.

In *Matthews v. Eldridge*, 424 U.S. 319, 328 (1976), the U.S. Supreme Court held that the exhaustion condition of § 405(g) consists of two elements. The first element—that "a claim for benefits" be presented to the SSA—is nonwaivable. *Id.* However, the second element—that the "administrative remedies prescribed by the Secretary be exhausted"—is waivable. *Id.* A waiver of the second element

ORDER – 10

1  may be expressly effected by the SSA.  *See Salfi*, 442 U.S. at 766–67.  Alternatively, a waiver of §

2  405(g) exhaustion may be effected by the Court in particular situations where "deference to the agency's

3  judgment is inappropriate."  *Eldridge*, 424 U.S. at 330.

4       Here, it is clear that the administrative process is anything but complete.  Even if there is by now a

5  decision pursuant to the ALJ's hearing that was scheduled for February of 2007, that decision must be

6  appealed to the Appeals Council before it may be brought to the district court.  20 C.F.R. § 404.955; *id.*

7  § 404.981.  The instant case has not reached this Court via § 405(g) and the trial Plaintiff seeks in this

8  Court is not available for challenges to administrative determinations under that statute.  Rather,

9  following § 405(g) and the rules governing judicial review results in a *de novo* review of legal standards

10 relied upon by the agency and a "substantial evidence" review of the agency's application of those

11 standards.  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  This review process generally begins

12 with a Report and Recommendation by a United States Magistrate Judge, *see* Local Magistrate Judges'

13 Rules MJR 4, and is followed by a fresh look at the magistrate's recommendation by a United States

14 District Judge.  Plaintiff has not utilized this process by filing the instant lawsuit.  Instead, she claims that

15 she should be able to circumvent the foregoing review process and come directly to this Court without

16 exhausting her administrative remedies because it would be "futile" to do otherwise.

17      In light of the foregoing, there are two avenues by which this Court may hear Plaintiff's claims for

18 benefits.  The first option involves a waiver of § 405(g) exhaustion and the second option involves an

19 evaluation of exhaustion and waiver under the mandamus statute, 28 U.S.C. § 1361.  As to the former

20 option, if Plaintiff has satisfied the nonwaivable element of § 405(g) (claim presentation), as noted *supra*

21 there are two ways that § 405(g)'s second element (exhaustion in the SSA) may be waived: (1) if the

22 Commissioner has directly waived the exhaustion requirement by indicating that some or all of Plaintiff's

23 claims are not within the agency's purview, *Salfi*, 442 U.S. at 766–67, or (2) if this Court finds reason to

24 deem the agency's actions to date "final" as to some or all of Plaintiff's claims and effectively waive

25 exhaustion for the Commissioner because the matters Plaintiff raises are such that forcing her to utilize

26 ORDER – 11

1    the agency review process amounts to affording her no review at all, *see Illinois Council*, 529 U.S. at

2    19–25; *Eldridge*, 424 U.S. at 330–32.  A court-imposed waiver must satisfy a three-part test.  *Kildare v.*

3    *Saenz*, 325 F.3d 1078, 1082 (9th Cir. 2003).  Specifically, for this Court to impose on the SSA a waiver

4    of exhaustion, Plaintiff's claim must be (1) "collateral to a substantive claim of entitlement (collaterality),"

5    (2) "colorable in its showing that denial of relief will cause irreparable harm (irreparability)," and (3) "one

6    whose resolution would not serve the purposes of exhaustion (futility)."  *Id.*  The Court will evaluate §

7    405(g) before discussing whether mandamus jurisdiction is available.

8            Plaintiff complains of several procedures and decisions.  She argues that the protracted process

9    she has been forced to endure is unreasonable and that the agency has "thwarted" its own review

10   procedures in its treatment of her.  Plaintiff also argues that because the ALJ limited the scope of his

11   hearing, he has clearly decided that some issues are not in his—or the Commissioner's—purview.

12   Plaintiff further argues that her due process right to a predeprivation hearing has been denied by the

13   stoppage of her benefits before the many disputed issues are resolved and without any notice prior to

14   2003.  In Plaintiff's case, recoupment of disability overpayments apparently has already begun through

15   withholding of retirement benefits that allegedly would otherwise be paid.  As noted *supra*, Plaintiff

16   requested "reconsideration" of the decision that she was overpaid due to participation in substantial

17   gainful activity and a cessation of disability, and this reconsideration decision is still under review by the

18   ALJ.  Also noted *supra* is the dispute between the parties regarding Plaintiff's refusal to fill out the

19   request for waiver of recoupment form that she believes is a "misrepresentation of the law" and the

20   consequent determination by the SSA that no "waiver"[4] of recoupment has yet been requested by

21   Plaintiff.

22           In *Califano v. Yamasaki*, 442 U.S. 682, 692–97 (1979), the U.S. Supreme Court held that neither

23

24   ─────────────────────

25        [4]  This discussion necessarily involves two entirely different uses of the term "waiver"—one
     referring to waiver of administrative exhaustion requirements and the other referring to claims available
     to Social Security beneficiaries wherein they may request "waiver" of recoupment of overpayments.

26   ORDER – 12

1   the Constitution nor federal statute mandates a prerecoupment hearing when a request for

2   "reconsideration," made upon an *ex parte* determination of overpayment, is under review, as is the case

3   here.  In contrast, the *Yamasaki* Court found that 42 U.S.C. § 404(b) by its terms requires a

4   prerecoupment hearing where there has been a request for "waiver" of recoupment.[5]  *Id.*  If Plaintiff had

5   requested a waiver and her benefits were stopped before an opportunity for a hearing, she might have a

6   good argument that this Court should deem the agency's decision "final" and waive exhaustion for the

7   SSA.  However, Plaintiff's claim of a right to a prerecoupment hearing is barred because she did not first

8   submit a claim to the agency for waiver of recoupment.  Thus, the *nonwaivable* element of §

9   405(g)—presentment of a claim—is dispositive.  Because no waiver of recoupment was requested, the

10  Court cannot reach the question of whether there was a final agency decision regarding "waiver."

11  Furthermore, even if the Court could find that a waiver claim was made, which it cannot, Plaintiff's

12  challenge to the waiver of recoupment form is not collateral to her claim for benefits.  On the contrary, it

13  is inextricably intertwined with her entitlement claims.  The proper means to challenge the waiver of

14  recoupment request form's congruence with SSA regulations is by actually requesting a waiver by use of

15  that form, allowing the agency to hear her objections to the form, and giving the agency an opportunity to

16  internally remedy its potentially improper form and issue a final decision before it is brought to federal

17  court.

18        As to "reconsideration," Plaintiff clearly has satisfied the nonwaivable element of § 405(g) by

19  submitting a claim for reconsideration and by timely appealing this issue.  However, the review process is

20  ongoing.  Moreover, the Supreme Court decided in *Yamasaki* that in cases of "reconsideration" requests,

21  there is no requirement that the agency afford a prerecoupment hearing.  Plaintiff's argument that she is

22  entitled to one is therefore meritless, *i.e.*, there is no colorable claim of irreparable harm.  Moreover,

23

24        [5]  Under 42 U.S.C. § 404(b), a "waiver" of recoupment is appropriate when an overpaid person
    "is without fault" and it is determined by the SSA that recoupment would "defeat the purpose" of
25  subchapter II or "be against equity and good conscience."  *See also* 20 C.F.R. § 404.508 ("Defeat the
    purpose of Title II"); *id.* § 404.509 ("Against equity and good conscience; defined").
26  ORDER – 13

1   Plaintiff cannot show that her objections to the hearing and review process are collateral to her claim for

2   benefits.  Again, these objections are inextricably intertwined with her benefits claims.  Nor does the

3   ALJ's decision to limit the scope of his hearing to that of the appealed "reconsideration" present any

4   reason for the Court to find that the SSA has decided that additional issues are outside its purview.[6]

5   Indeed, the SSA emphasizes that it can decide all of the issues raised, and the agency has decidedly not

6   waived its own exhaustion requirement.  Further, the Court has considered Plaintiff's argument that the

7   delay in her case is unfair.  The Supreme Court has specifically considered delay concerns as well, finding

8   that Congress considered the "price . . . [of] occasional individual, delay-related hardship" and

9   determined that price justified in light of the benefit of channeling "virtually all legal attacks through the

10  agency."  *Illinois Council*, 529 U.S. at 13.  Therefore, Plaintiff's unfairness argument is insufficient to

11  establish futility.  Accordingly, because Plaintiff is not entitled to a prerecoupment hearing under

12  *Yamasaki* and because this Court cannot find delay alone sufficient to deem the SSA's decision final,

13  particularly in light of the ongoing proceedings and the acknowledgment by the SSA that there are

14  multiple issues in Plaintiff's case that should be addressed in a phased approach, Plaintiff cannot satisfy §

15  405(g) via a court-imposed waiver of exhaustion requirements.

16      The Court now turns to the question of mandamus jurisdiction.  Federal district courts "shall have

17  original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the

18  United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  The

19  U.S. Supreme Court has not decided whether the jurisdictional restriction in 42 U.S.C. § 405(h) prohibits

20  _____

21      [6]  Plaintiff's argument that the "overpayment" issue has evaded review is without merit.  The ALJ
    has determined that associated logical threshold issues are whether Plaintiff's disability ceased and

22  whether Plaintiff was engaged in substantial gainful activity.  The ALJ's issue statement necessarily deals
    with the disability and work activity as a prerequisite to evaluating overpayment issues and suggests that

23  a later "stage of the proceedings" will deal with overpayments.  (Def.'s Mot., Moore Decl. Ex. L.)
    Plaintiff's citation to *McCarthy v. Apfel*, 221 F.3d 1119, 1124 (9th Cir. 2000), for the proposition that

24  "proof of overpayment is a requirement for recovery, not a prerequisite to judicial review" is inapposite
    not only because it is taken out of context, but also because *McCarthy* involved § 405(g) review

25  following a claim for waiver of recoupment *and* a final decision as to that issue, neither of which have yet
    occurred in the instant case.

26  ORDER – 14

federal courts from hearing mandamus cases in Social Security cases.  Rather, the Supreme Court has

evaluated mandamus separately, assuming that mandamus jurisdiction may be invoked in such cases.

*Ringer*, 466 U.S. at 616.  This Court will do the same.

Mandamus jurisdiction is available if (1) the plaintiff's claim is "clear and certain," *Kildare*, 325

F.3d at 1084, (2) the plaintiff "has exhausted all other avenues of relief," and (3) "only if the defendant

owes [the plaintiff] a clear nondiscretionary duty," *Ringer*, 466 U.S. at 616.  Here, Plaintiff cannot meet

the second element—exhaustion—because she may seek review via agency channels.  For the same

reasons that she cannot escape § 405(g)'s exhaustion requirement, she may not invoke mandamus

jurisdiction.  The Court has already found *supra* that exhaustion was not completed and that there is no

reason to waive the exhaustion requirement for the Commissioner in this case.  Moreover, Plaintiff clearly

fails the third element—establishing a clear nondiscretionary duty—as well.  The SSA is not required to

provide a prerecoupment hearing in Plaintiff's case because she has not properly requested a waiver of

recoupment.  The SSA is exercising purely discretionary authority in allowing the ALJ to determine

which issues will be heard in which order, as well as the procedure for evaluating Plaintiff's claim.

Because Plaintiff fails at least two of the three requirements for mandamus jurisdiction, this Court cannot

issue a writ of mandamus.

For the foregoing reasons, this Court has no subject matter jurisdiction to hear Plaintiff's claims

for benefits, Plaintiff's claims for declaratory or injunctive relief, or her related constitutional claims and

challenges to agency processes and forms.  Accordingly, her First and Fifth Causes of Action shall be

DISMISSED for lack of subject matter jurisdiction.

**B.    ADA Claim**

Plaintiff's claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, alleges

that Defendant is a "public entity" as defined by 42 U.S.C. § 12131(1)(B) and essentially challenges the

waiver of recoupment form required by the SSA.  Subject matter jurisdiction to hear claims under the

ADA depends on § 1331 because it is a claim arising under federal law.  *See, e.g.*, *Reed v. Heil Co.*, 206

ORDER – 15

F.3d 1055, 1058 (11th Cir. 2000).  As explained *supra* section II.A, because 42 U.S.C. § 405(h) bars claims under § 1331 when the claims also arise under Title II of the Social Security Act, this Court has no subject matter jurisdiction to hear Plaintiff's ADA claim related to the SSA's benefits decisions and utilization of forms to implement its regulations.

Moreover, as noted *supra*, the United States and its agencies have sovereign immunity from all lawsuits unless Congress expressly waives that immunity.  *Blue Fox, Inc.*, 525 U.S. at 260.  The SSA is a federal agency.  As such, it is not a "department, agency, special purpose district, or other instrumentality of a State or States or local government."  42 U.S.C. § 12131(1)(B).  Accordingly, because Congress has not specifically waived sovereign immunity as to the SSA, this Court has no subject matter jurisdiction over the SSA for an ADA claim in any event.  *See Cellular Phone Taskforce v. F.C.C.*, 217 F.3d 72, 73 (2d Cir. 2000) ("Title II of the ADA is not applicable to the federal government.").

For the foregoing reasons, Plaintiff's Fourth Cause of Action shall be DISMISSED for lack of subject matter jurisdiction.

### C.    Tort Claims

Plaintiff claims that the SSA negligently or willfully destroyed her records.  Again, the United States and its agencies have sovereign immunity from all lawsuits unless Congress expressly waives that immunity.  *Blue Fox, Inc.*, 525 U.S. at 260.  The Federal Tort Claims Act ("FTCA") expressly waives sovereign immunity for claims against the United States for personal injury, death, or property damage, 28 U.S.C. § 1346(b), if a private individual in like circumstances would be liable, *id.* § 2674.  The FTCA also contains an exhaustion requirement, *id.* § 2675, and a statute of limitations, *id.* § 2401.  Failure to state a valid claim within the constraints of Congress's limited waiver of sovereign immunity in the FTCA deprives this Court of subject matter jurisdiction over the United States (and its branches and agencies) in a FTCA action.  *Id.* § 1346(b).

Plaintiff's FTCA claims fail for a multitude of reasons.  First, the SSA, as a federal agency, is not a proper defendant in a FTCA action.  *Woods v. United States*, 720 F.2d 1451, 1452 n.1 (9th Cir. 1983)

ORDER – 16

1   (The "United States is the only proper defendant in an action brought under the Federal Torts Claims

2   Act.").   Second, Plaintiff has made no allegation that she administratively exhausted any tort claims.

3   Third, the alleged loss of files and destruction of records is intertwined with Plaintiff's claim for benefits.

4   As discussed *supra*, 42 U.S.C. § 405(h) specifically deprives the Court of subject matter jurisdiction over

5   claims arising under 28 U.S.C. § 1346 when they also arise under Title II of the Social Security Act.

6   Accordingly, Plaintiff's tort claims are barred by § 405(h) in any event.

7        For the foregoing reasons, Plaintiff's Third Cause of Action shall be DISMISSED for lack of

8   subject matter jurisdiction.

9        **D.    Civil Rights Claims**

10        Plaintiff does not assert any separate cause of action for civil rights claims.  Rather, she generally

11   alleges jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. §§ 1983 and 1985.  (Am. Compl. ¶¶

12   1.20, 1.21.)  To the extent that these jurisdictional allegations attempt to assert constitutional claims

13   against the United States that also arise under Title II of the Social Security Act, they are barred by 42

14   U.S.C. § 405(h)'s prohibition on constitutional claims against the United States brought pursuant to 28

15   U.S.C. § 1346(a)(2), as discussed *supra* section II.A.  To the extent that they bring additional civil rights

16   claims against the SSA, they are barred by sovereign immunity.  As noted *supra*, the United States and its

17   agencies have sovereign immunity from all lawsuits unless Congress expressly waives that immunity.

18   *Blue Fox, Inc.*, 525 U.S. at 260.  Any legislative waiver of immunity must be strictly construed, "in favor

19   of the sovereign."  *Id.* at 261.  There is no waiver of sovereign immunity in 42 U.S.C. § 1985.  Moreover,

20   notwithstanding the applicability of 42 U.S.C. § 1983 only to deprivations of federal rights made under

21   color of *state* law and the utter unavailability of a § 1983 claim against a federal agency, the Court notes

22   that analogous actions pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of*

23   *Narcotics*, 403 U.S. 388 (1971), contain no waiver of sovereign immunity.  Rather, *Bivens* actions are

24   proper only against federal officials, not entire agencies.  *F.D.I.C. v. Meyer*, 510 U.S. 471, 484–86

25   (1994).

26   ORDER – 17

1    For the foregoing reasons, any residual civil rights claims Plaintiff has made but that have not

2    already been dismissed shall be DISMISSED for lack of subject matter jurisdiction.

3    **E.    Administrative Procedure Act**

4    Nowhere in Plaintiff's Amended Complaint does she state a claim under the Administrative

5    Procedure Act ("APA"), 5 U.S.C. §§ 701–706.  Yet, Plaintiff's response to Defendant's motion to

6    dismiss purports to invoke the APA.  Even if the Court generously construed Plaintiff's response and

7    argument regarding the APA as a motion to amend her complaint, such amendment would be denied

8    because the Court has no subject matter jurisdiction to hear Plaintiff's APA claim.  The APA does not

9    provide an independent source of subject matter jurisdiction.  *Yamasaki*, 442 U.S. at 690 n.7.  As a

10   federal statute, jurisdiction over an APA claim would lie in 28 U.S.C. § 1331.  As discussed *supra* section

11   II.A, 42 U.S.C. § 405(h) bars § 1331 claims when such claims arise under Title II of the Social Security

12   Act.  Because Plaintiff's purported APA claim is inextricably intertwined with her claims for Social

13   Security benefits, this Court has no subject matter jurisdiction over it.

14   **F.    FOIA Claim and Proposed Amendment to FOIA Claim**

15   The Freedom of Information Act requires that federal agencies publish the procedures governing

16   information requests made by the public.  5 U.S.C. § 552(a)(1).  The SSA's procedures are at 20 C.F.R.

17   §§ 402.5–402.205.  With respect to appeals of FOIA decisions, the SSA's procedure is found in §

18   402.200, which provides that appeals may be made within thirty days of a denial of a FOIA request.

19   Further, 20 C.F.R. § 402.205 provides that final decisions may be appealed to the United States District

20   Court pursuant to 5 U.S.C. § 552(a)(4)(B).  The agency's failure to act on a request within the time

21   limits prescribed by 20 C.F.R. § 402.140 may be treated as a denial for purposes of presentation of a

22   claim to a district court.  20 C.F.R. § 420.205.

23   Exhaustion is a jurisdictional prerequisite to a FOIA claim.  *In re Steele*, 799 F.2d 461, 466 (9th

24   Cir. 1986); *United States v. U.S. Dist. Court*, 717 F.2d 478, 480 (9th Cir. 1983); *see also Hymen v.*

25   *Merit System Protection Bd.*, 799 F.2d 1421, 1423 (9th Cir. 1986) ("FOIA requires that administrative

26   ORDER – 18

1   appeals be exhausted before suit may be brought in federal court."), *cert. denied*, 481 U.S. 1019 (1987),

2   *overruled on other grounds by Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990), *and recognized in*

3   *Capital Tracing, Inc. v. United States*, 63 F.3d 859 (9th Cir. 1995) and *Williams-Scaife v. Dep't of Def.*

4   *Dependent Schs.*, 925 F.2d 346 (9th Cir. 1991).  Accordingly, only those FOIA denials that were timely

5   appealed administratively or that may be deemed final due to inaction may be heard in this Court.

6        As noted *supra*, there are two sets of FOIA requests potentially at issue here.  The first set

7   consists of the requests Plaintiff submitted in March of 2005.  The agency indicated that it believed it had

8   responded to those requests and notified Plaintiff of her right to an administrative appeal.  Plaintiff did not

9   appeal.  Accordingly, this Court has no subject matter jurisdiction to review the agency's action or

10   inaction with respect to those FOIA requests due to lack of exhaustion of administrative remedies.

11        The second set of FOIA requests are those dated August 5, 2006 and June 19, 2006, which the

12   SSA asserts were received on August 29, 2006 and September 11, 2006, respectively.  Plaintiff does not

13   dispute these "received" dates.  Throughout the autumn of 2006, *after* Plaintiff had filed the instant

14   lawsuit, Plaintiff's counsel and the OPD corresponded regarding responses to these two requests.  On

15   December 16, 2006, the SSA determined that it had fully responded and notified Plaintiff of her right to

16   an administrative appeal, which she invoked in January of 2007.  The SSA's final decision on that appeal

17   did not issue until February 22, 2007.  While 5 U.S.C. § 552(a)(4)(B) and 20 C.F.R. § 420.205 allow

18   federal district court review of the final decision made on February 22, 2007, whether that decision may

19   be reviewed in the instant lawsuit is another question.

20        "It has long been the case that the jurisdiction of the court depends upon the state of things at the

21   time of the action brought."  *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004)

22   (internal quotation omitted).  This requires analysis of the original complaint, and amendments are

23   irrelevant to the state of subject matter jurisdiction on the date the original complaint was filed.  *Morongo*

24   *Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380–81 (9th Cir.

25   1988).  Here, the original complaint was filed on August 31, 2006.  At that time, the SSA had not had the

26   ORDER – 19

1  opportunity to respond to Plaintiff's second set of FOIA requests, deemed by the SSA as "received" on

2  August 29, 2006 and September 11, 2006, pursuant to the timelines set forth in 20 C.F.R. § 402.140.

3  Nor had Plaintiff filed an administrative appeal or received her final decision on appeal by August 31,

4  2006.  Accordingly, as of August 31, 2006, this Court had no subject matter jurisdiction to hear a FOIA

5  claim arising out of Plaintiff's second set of FOIA requests.

6       Plaintiff's proposed amendment, now that there has been a final decision that may be brought to a

7  federal district court, cannot cure the foregoing subject matter jurisdictional defect.  After the initial

8  pleading amendment period provided by the Federal Rules, "a party may amend the party's pleading only

9  by leave of court or by written consent of the adverse party; and leave shall be freely given when justice

10  so requires." Fed. R. Civ. P. 15(a).  The United States Supreme Court has delineated the factors that a

11  district court should consider, as follows:

12       If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject
   of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the
13  absence of any apparent or declared reason—such as undue delay, bad faith or dilatory
   motive on the part of the movant, repeated failure to cure deficiencies by amendments
14  previously allowed, undue prejudice to the opposing party by virtue of allowance of the
   amendment, futility of amendment, etc.—the leave sought should, as the rules require, be
15  "freely given."

16  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Denial of leave to amend requires stated justification by the

17  district court.  *Id.*

18       The underlying purpose of Rule 15 is to "'facilitate decision on the merits rather than on the

19  pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)

20  (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)).  This purpose must guide the Court

21  in determining whether to grant leave to amend.  *Id.*  While Rule 15 must be applied with "extreme

22  liberality," *id.* (citations omitted), there are limits to this command.  In accordance with *Foman*, "[f]our

23  factors are commonly used to determine the propriety of a motion for leave to amend.  These are: bad

24  faith, undue delay, prejudice to the opposing party, and futility of amendment."  Futility alone may justify

25  denial of leave to amend.  *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2003).

26  ORDER – 20

1    Under Federal Rule of Civil Procedure 15(c), amendments relate back to the date of the original

2    pleading.  FED. R. CIV. P. 15(c).  Because the Court had no subject matter jurisdiction to hear Plaintiff's

3    FOIA claim arising out of her second set of FOIA requests on the date of the original complaint, an

4    amendment adding this claim cannot cure the jurisdictional defect.  The existence of subject matter

5    jurisdiction is hardly a technicality and a lack thereof prohibits a decision on the merits.  Accordingly,

6    Plaintiff's proposed amendment is futile.

7    For the foregoing reasons, Plaintiff's Second Cause of Action shall be DISMISSED for lack of

8    subject matter jurisdiction.  Plaintiff's motion to amend this jurisdictionally deficient claim shall be

9    DENIED due to futility.

10    **G.    Privacy Act**

11    Plaintiff's Opposition vaguely refers to "Privacy Act requests" in her discussion of FOIA.

12    Plaintiff has not pled any Privacy Act claims.  (*See* Am. Compl.)  Accordingly, no such claims are part of

13    this lawsuit or at issue on the instant motions.

14    **H.    Spoliation of Evidence**

15    Plaintiff's Opposition suggests that this Court should rule in her favor because of the allegedly

16    lost Social Security files.  Plaintiff has not pled spoliation of evidence in her complaint.  Presumably, then,

17    her request is in the nature of a sanction request.  However, because this Court has no subject matter

18    jurisdiction to hear any of Plaintiff's claims, this Court cannot rule in her favor—either on the merits of

19    claims or defenses or for any other reason.  Accordingly, this request is DENIED.

20    **I.    Motion to Strike**

21    Plaintiff moves to strike (Dkt. No. 45) the entire Reply of Defendant regarding its motion to

22    dismiss because it allegedly contains new information, is over length, and otherwise does not comply with

23    the Local Rules.  The Court notes that most of Defendant's briefs have been over length.  *See* Local Civil

24    Rule 10(e)(1) ("Margins and Fonts").  Substantively, however, the Court finds that Plaintiff's Opposition

25    contained far more "new" information—*i.e.*, argument regarding claims never pled—than Defendant's

26    ORDER – 21

1   Reply.  Regardless, the Court has not considered any material not properly presented or considered when

2   assessing subject matter jurisdiction.  Accordingly, the motion to strike is DENIED.

3   **III.     CONCLUSION**

4            For the foregoing reasons, Defendant's Motion to Dismiss (Dkt. No. 23) is GRANTED in its

5   entirety and Plaintiff's Motion To Amend Complaint (Dkt. No. 48) is DENIED.  This matter is hereby

6   DISMISSED for lack of subject matter jurisdiction.  Plaintiff's pending Motion for Reconsideration of

7   Order Denying Extension of Discovery Cut-Off (Dkt. No. 49) and Motion to Permit Alternate Service of

8   Subpoenas To Attend Trial, and for Telephone Testimony at Trial and Motion in Limine re Requests for

9   Admissions (Dkt. No. 51) are both STRICKEN as MOOT.  The Trial in this matter is STRICKEN and

10  the Clerk is DIRECTED to CLOSE this case.

11           SO ORDERED this 17th day of April, 2007.

12

13                                                        John C. Coughenour
                                                          United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26  ORDER – 22